UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 5:08-95-KKC

THEODORE JACKSON,                                                                                          PLAINTIFF

v.                                            **OPINION AND ORDER**

MICHAEL J. ASTRUE,
Commissioner of Social Security,                                                                       DEFENDANT

* * * * * * * *

This matter is before the Court on the Cross Motions for Summary Judgment of the Plaintiff, Theodore Jackson, who is proceeding *pro se* [R. 9], and the Defendant, Commissioner Astrue [R. 10].  For the reasons given below, the Court **DENIES** the Plaintiff's Motion for Summary Judgment and **GRANTS** the Defendant's Motion for Summary Judgment.

I.     **Factual and Procedural Background**

The Plaintiff, Theodore Jackson, filed applications for a period of disability, disability insurance benefits, and supplemental security income, on November 23, 2005.  Plaintiff alleges that he became disabled on August 11, 2004 due to diabetes and problems with his feet.  *See* Transcript at 59-60 [hereinafter "Tr."].  Plaintiff alleges that his impairments are disabling because when he walks, bones in his feet grind against each other, causing severe pain and swelling in his feet.  Plaintiff's Motion for Summary Judgment at 1 [hereinafter "Plaintiff's Motion"].  He also states that his diabetes has caused him to become insulin dependent, and he claims to have "really bad nerves."[1]  *Id.* at 2.

---

[1] Plaintiff claims "really bad nerves" as a disabling impairment for the first time in his Motion for Summary Judgment.  This was not listed as a disabling impairment in his disability application.

1

Plaintiff explains that he first noticed his foot pain during his basic training for the armed services in 1974, and that the pain has worsened over the years until it became disabling in August 2004. Tr. at 54, 86. Plaintiff also states that he discovered he was a diabetic in 2004, and that he became insulin dependent on February 8, 2008. Tr. at 86; Plaintiff's Motion at 1. Since being honorably discharged from the army due to his foot problems, Plaintiff worked as a laundry and hall porter at a hotel, from 1991 to 2004, and as a handyman at an apartment complex from 2000 on. Tr. at 60, 65-74. Plaintiff's hotel work consisted of doing laundry, lifting and carrying objects, unloading trucks, assisting with maintenance, and doing part-time desk work for three months near the end of his tenure. Tr. at 60-61, 75. As an apartment complex handyman, Plaintiff testified that he picked up discarded paper, cleaned hallways, and did maintenance on the swimming pool. Tr. at 223. Plaintiff's daily activities consist of cleaning, washing dishes, shopping, mowing his lawn, preparing meals, vacuuming, mopping, taking out the garbage, and visiting friends. Tr. at 85; ALJ's Opinion at 5. Since 1974, Plaintiff has taken several medications for his impairments, including Ibuprofen, Lisinopril, and Metformin. Tr. at 62-63.

Plaintiff was treated at the Veterans' Administration Medical Center [hereinafter "VA Center"] from October 13, 2004 to May 26, 2006. Plaintiff had been diagnosed with diabetes mellitus type II from as early as January 12, 2004. Tr. at 162. On November 4, 2004, Dr. Deborah Photos noted that Plaintiff had bunions, hammertoes, and flat feet, and gave an impression of onychomycosis with calluses. Plaintiff's treatment was described as "debride nails and lesions," "shoes fitted and ordered," and "reviewed foot education and importance." Tr. at 199. On December 22, 2004, treatment notes record that Plaintiff's health was improving when he was on a normal diabetic diet and Plaintiff stated that he was "doing okay" after receiving a

new glucometer. Plaintiff was put on diet control, his examinations were normal, and his diabetic assessment/plan was stable. Tr. at 193-96. Records from December 30, 2004 indicate that Plaintiff's diabetes was not well controlled and that his cholesterol was elevated. Plaintiff was prescribed metformin and lisinopril and was urged to improve his diet and exercise activities. Tr. at 191-92.

On January 18 and 19, 2005, Plaintiff complained of problems with his metformin medication and of diarrhea, stomach cramping, and sexual dysfunction; his medication was changed to avandia on January 28. Tr. at 187-90. In early February 2005, Plaintiff stopped his metformin due to severe diarrhea. He was declined avandia and was advised to regularly check his fingerstick blood sugar and to improve his exercise regimen. Tr. at 186-87. On a February 25, 2005 checkup at the VA Center, Plaintiff adamantly refused to consider insulin, admitted that he had not been following his recommended diabetic diet and exercise regimen, and stated that he was taking his prescribed lisinopril. Plaintiff's fingerstick blood sugar readings were random, with an average reading of 183. Tr. at 184-85. On April 19, 2005, Plaintiff reported that his foot pain had improved since he stopped working and standing on his feet all day. Tr. at 184. On June 12, 2005, Plaintiff complained of mid-range severe pain from a sore on his right foot and of ongoing problems with bunions. He admitted that he had not been wearing the special shoes he had been given by his doctor. A boney prominence with mild erythema was located on his foot, though there was no warmth or evidence of infection. Plaintiff was prescribed tylenol and ibuprofen and told to continue scheduled podiatry. Tr. at 180-82. Also at this time, a study of Plaintiff's foot sores was compared with an earlier study from June 23, 2003. The impression was of degenerative changes of the metatarsal-phalangeal joint with valgus deformity. Tr. at 200.

On June 20, 2008, Plaintiff reported that he continued to have foot pain and that his diabetes was under good control due to a improved diet and exercise. He stated that he was doing some weight lifting and biking on a stationary bicycle. Plaintiff was diagnosed with diabetes mellitus. Tr. at 178-80. A June 21, 2008 letter from the VA Center informed Plaintiff that his cholesterol was high and advised him that his diabetes could be better controlled by increasing his metformin dosage to 500 milligrams per day. Tr. at 177-78.

On October 18, 2005, treatment notes indicated that Plaintiff had not made significant diabetic changes in his diet. Plaintiff also stated that he was able to use his stationary exercise bike and that it did not aggravate his foot pain, that he had been doing some weight lifting, and that he was not checking his blood sugar after exercise. Tr. at 176-77. On November 17, 2005, Plaintiff was again diagnosed with diabetes mellitus and also with foot arthritis. Plaintiff's condition was described as stable and it was noted that his reactions to the metformin improved with a reduced dosage. Tr. at 174-75. December 6, 2005 treatment notes stated that Plaintiff's diabetes is poorly controlled. Plaintiff was instructed to comply with his diet and keep a blood sugar diary, and his medication was switched to rosiglitazone. Tr. at 173-74. On December 17, 2005, Plaintiff checked in for a sore throat; his discharge instructions stated that he had no activity restrictions. Plaintiff was considered alert and oriented times three. All of Plaintiff's systems were within normal limits, and he reported that he had not experienced any pain for the last several weeks or months. The notes indicate that Plaintiff exhibited no signs of any psychological impairment. Plaintiff also reported that his blood sugar readings had been increasing, and he was again advised to control his diet and to exercise. Tr. at 163-73.

On February 1, 2006, Plaintiff's depression and post traumatic stress disorder screenings

were negative. Tr. at 129-30. Plaintiff stated that he had not been regularly checking his blood sugar level, that he had not been totally compliant with his diabetic diet, and that he had been having oral pain from an infection. He reported that he was working during this time. Plaintiff tolerated his avandia medication well. Plaintiff was also advised of the need to begin insulin treatment, though he did not wish to do so. Tr. at 126-29. The VA Center wrote to Plaintiff on February 2, 2006 to inform him that his glycohemoglobin was very high. This letter also indicated that Plaintiff was at a high risk for diabetes-related complications due to poor glycemic control and the need to begin on insulin. Plaintiff's kidney function and liver function tests were within normal limits. Tr. at 155. Plaintiff had a tooth extracted on February 24, 2006 because of continued oral pain. Tr. at 122. On March 2, 2006, Plaintiff's treatment consisted of debriding of the nails and lesions. At this time, Plaintiff reported that he was not experiencing any pain. Tr. at 121. On March 15, 2006, Plaintiff's only complaint was of chronic foot pain; he was "[o]therwise doing well." Plaintiff's diabetes was under very poor control. Plaintiff was advised to continue changing his diet and to increase his activity. A review of Plaintiff's blood sugar also suggested declining glycemic control. Tr. at 119-21. On March 22, 2006, Plaintiff's diabetes was again noted to be in very poor control, high cholesterol was reported, and insulin treatment was recommended. Tr. at 116-18.

State agency examiner Jorge Baez-Garcia analyzed Plaintiff's case on March 13, 2006. Baez-Garcia stated that, although Plaintiff has poorly controlled diabetes and degenerative changes in his feet, no evidence of impairments was noted. Baez-Garcia opined that Plaintiff's alleged impairments were not severe. Tr. at 102. On May 4, 2006, Plaintiff's treating physician, Dr. Photos, stated that Plaintiff suffers from arthritic deformities of his feet bilaterally, resulting

5

in pain; from peripheral diabetic neuropathy; and from loss of sensation in his feet bilaterally, causing his callosities to be limb threatening. Dr. Photos also stated that Plaintiff's impairments are progressive in nature and will worsen with time, which in turn can cause increased arthritic and diabetic complications. She further noted that Plaintiff's x-ray revealed large bony and flat foot deformities with medial talar head deviation. Dr. Photos opined that Plaintiff "is unable to perform any job that requires standing on his feet or walking for any time." Tr. at 104.

Dr. Rami Kahwash performed a consultative examination of Plaintiff on June 3, 2006. Dr. Kahwash recorded Plaintiff's description of impairments associated with diabetes mellitus and right knee pain associated with prolonged walking and standing. An examination of Plaintiff's right knee was "grossly normal" and there was no evidence of rigidity. A review of Plaintiff's systems was unremarkable. Plaintiff had normal gait and station and was oriented times three. Dr. Kahwash also noted that Plaintiff had no joint deformities or decrease in range of motion, that he had a negative straight leg raising in both the sitting and supine positions, that he had no impairment in toe or heel walking, that he had no difficulty in getting on and off the examining table, and that there was no evidence of nerve root compression. Dr. Rahwash opined that there was no physical evidence for significant restriction in Plaintiff's tolerance for stooping, bending, reaching, sitting, standing, moving about, lifting, carrying, handling objects, or in his ability to travel. Tr. at 205-07.

In addition, state agency physician Dr. P. Saranga performed an analysis of Plaintiff's case on June 9, 2006. Dr. Saranga took note of Dr. Photos's opinion that Plaintiff is unable to perform any jobs that require walking or standing, but stated that this is a determination reserved to the Commissioner. Dr. Saranga adopted the opinion of examiner Baez-Garcia and gave it

6

great evidentiary weight. Dr. Saranga noted that Plaintiff's vision, extremities, and all other systems were without noticeable limitation. Dr. Saranga stated that there was no swelling or signs of arthritis despite Plaintiff's allegations of right knee pain, that his blood pressure was under control, and that he had no limitations on the examination. Dr. Saranga went on to opine that Plaintiff's allegations "are only partially credible, but not to the severe degree alleged in light of the objective medical evidence." Dr. Saranga concluded that Plaintiff's alleged impairments are "non-severe." Tr. at 208.

Plaintiff's applications for a period of disability, disability insurance benefits, and supplemental security income were denied on April 3, 2006, and reconsideration was denied on June 23, 2006. At Plaintiff's request, a hearing before Administrative Law Judge [hereinafter "ALJ"] Jimmy N. Coffman was held on August 6, 2007 in Lexington. On September 18, 2007, the ALJ issued a decision denying Plaintiff's application. The ALJ found that Plaintiff did not have any medically determinable impairments that could be considered "severe" under the Social Security regulations. As such, the ALJ determined that Plaintiff was not disabled during the period of time in question, and was not eligible for disability insurance benefits and supplemental security income. Plaintiff now brings suit before this Court challenging the ALJ's unfavorable disability decision.

## II. Standard of Review

When reviewing decisions of the Social Security Agency, the Court is commanded to uphold the Agency decision, "absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (internal

quotation marks and citation omitted). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 285-86 (6th Cir. 1994). The Court is required to defer to the Agency's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Further, when reviewing the ALJ's decision, the Court cannot review the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *Nelson v. Comm'r of Soc. Sec.*, 195 Fed. Appx. 462, 468 (6th Cir. 2006); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Where the Commissioner adopts the ALJ's opinion as its own opinion, the Court reviews the ALJ's opinion directly. *See Sharp v. Barnhart*, 152 Fed. Appx. 503, 506 (6th Cir. 2005).

**III. Analysis**

The Court notes that Plaintiff is proceeding *pro se* in this action. *Pro se* litigants are held to "less stringent standards than formal pleadings drafted by lawyers." *West v. Adecco Employment Agency*, 124 Fed. Appx. 991, 992 (6th Cir. 2005) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). As such, the pleadings that Plaintiff has filed will be liberally construed in the Court's assessment of Plaintiff's arguments. *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991).

Plaintiff states that he sought disability benefits because of pain from bones that rub together in his feet, arthritis, insulin-dependent diabetes, and "really bad nerves." Plaintiff's

Motion at 1-2.  He says that the work he performed in the past was easy and usually kept him off his feet for most of the day, but that new employees would often be brought into these jobs "that made it hard on me so I would be not at ease."  *Id.*  Plaintiff concludes by restating his need for disability benefits due to the pain associated with the aforementioned conditions.  *Id.* at 2.  Construing this liberally, Plaintiff appears to be arguing that the ALJ insufficiently assessed the severity of the disabling pain from Plaintiff's impairments.  In general, then, the substance of Plaintiff's argument can only be that the ALJ's decision is not supported by substantial evidence of record, and that substantial evidence instead supports Plaintiff's claim of disability.[2]  The Court does not agree.

It is the responsibility of the Commissioner of Social Security, acting through the ALJ, to determine whether a social security disability claimant qualifies as legally disabled, and is thus entitled to disability insurance benefits.  *See* 20 C.F.R. § 404.1527(e)(1).  To make this determination, the ALJ must perform a five-step analysis, as follows:

> First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities."  Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience.  Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled.  For the fifth and final step,

---

[2] Plaintiff also argues over the proper job titles for his past employment.  He claims that Social Security improperly characterized his job at the apartment complex as "handyman" when it should have been called "groundskeeper."  Plaintiff's Motion at 1.  Plaintiff also states that he has never referred to this job as a "property manager," contrary to what Defendant claims.  Plaintiff's Supplemental Pleading [R. 11].  Whatever the proper job title, at the very least, this issue is irrelevant since the parties do not appear to dispute the actual responsibilities and duties that Plaintiff had for this job.  Moreover, as explained more fully below, the ALJ's decision turns on his determination that Plaintiff has no severe impairment.  Plaintiff's past employment, whatever its title, is irrelevant to whether Plaintiff's impairments are of disabling severity.

>even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001) (citing 20 C.F.R. §§ 404.1520, 404.920). An impairment or combination of impairments is considered "severe" if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Moreover, "an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). While the claimant bears the burden of proof for the first four steps of this process, if she does so, the burden shifts to the Commissioner for the final step. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 498 (6th Cir. 2006).

In addition, a two-part analysis is used to evaluate the credibility of a claimant's allegations of disabling pain. First, the ALJ must determine whether the claimant has an underlying medically determinable impairment that could reasonably be expected to produce the claimant's symptoms. 20 C.F.R. § 929(a). Second, if such an impairment exists, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms on the claimant's ability to do basic work activities. *Id.* Relevant factors that may be considered in this evaluation include: the claimant's daily activities; the location, duration, frequency, and intensity of symptoms; factors that precipitate and aggravate symptoms; the type, dosage, effectiveness, and side effects of medication taken to alleviate the symptoms; other treatment undertaken to relieve the symptoms; other measures undertaken to relieve the symptoms; and any other factors bearing on the ability of the claimant to perform basic work activities. *Id.*; *see also Rogers v. Comm'r of*

10

*Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007).

Here, the ALJ performed the required analysis. The ALJ first found that Plaintiff has not engaged in substantial gainful activity since his alleged disability onset date. ALJ's Opinion at 3. Next, the ALJ found that Plaintiff has the following medically determinable impairments: non-insulin dependent diabetes mellitus and moderate bunion, hammertoes, and flat foot. *Id.* at 4. However, the ALJ then determined that none of these medically determinable impairments significantly limit Plaintiff's ability to perform basic work-related activities for twelve consecutive months, and were thus not severe. *Id.* at 4-5. Since Plaintiff lacked a severe impairment, the five-step analysis ended at step two with a finding that Plaintiff has not been disabled since his alleged onset date of August 11, 2004. *Id.* at 6. Furthermore, although not required due to the findings at step two, the ALJ also determined that Plaintiff is able to return to his past relevant work and is capable of making a vocational adjustment to other work. *Id.* Finally, the ALJ also followed the two-step process for evaluating complaints of disabling pain. The ALJ found that, although Plaintiff's medically determinable impairments can reasonably be expected to produce the alleged symptoms, his statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible. *Id.*

Upon review of the administrative record, the Court is convinced that the ALJ's decision is supported by substantial evidence. Plaintiff's medical records indicate that he has been treated for diabetes mellitus for several years. However, this treatment appears to have been very conservative in nature, as it only consisted of prescription medication and recommended exercise and diet changes. Tr. at 119-21, 126-29, 173-80, 184-90, 192-96. Records show that Plaintiff often chose not to follow this recommended treatment, as he routinely admitted that he had not

been maintaining a diabetic diet or doing sufficient exercise. Tr. at 119-21, 126-29, 163-74, 176-77, 180-82, 184-87, 191-92. On the occasions when Plaintiff did follow doctors' repeated recommendations for his diet and exercise regimen, his diabetes became noticeably more controlled; it was when he ignored these recommendations that his diabetes became difficult to control. Tr. at 178-80, 193-96. Plaintiff even refused to undergo insulin treatment for years, despite his doctors' recommendations that he do so. Tr. at 116-18, 126-29, 155, 184-85. Any worsening of Plaintiff's symptoms, therefore, can at least partially be attributed to his failure to responsibly care for himself.

Further medical records from the VA Center support the ALJ's conclusions. On one occasion, Plaintiff stated that he was "doing okay" after receiving a new glucometer. Tr. at 195. In December 2004, after Plaintiff was put on diet control, his examinations were normal and his diabetic assessment/plan was stable. Tr. at 193-96. On April 19, 2005, Plaintiff mentioned that his foot pain had improved after he had stopped working during this time. Tr. at 184. In June 2005, although a boney prominence with mild erythema was discovered on his foot, there was no warmth or evidence of infection. Tr. at 181. In 2005 and 2008, Plaintiff stated that despite his allegations of totally disabling pain, he was able to lift weights and use an exercise bicycle. He even admitted that using the bicycle did not aggravate his foot pain. Tr. at 176-77, 179. In 2005, Plaintiff's condition was considered "stable." Tr. at 174-75.

In December 2005, Plaintiff's discharge instructions from the VA Center stated that he had no activity restrictions. Moreover, at this time Plaintiff was alert and oriented times three, all of his systems were within normal limits, and he exhibited no signs of any psychological impairment. Tr. at 163-73. Plaintiff also admitted at this time that he had not experienced any

pain for the last several weeks or months. Tr. at 170. In February 2006, Plaintiff's screenings for depression and post traumatic stress disorder were negative. Tr. at 129-30. Plaintiff also stated that he had been working during this time, though the ALJ noted that this did not constitute substantial gainful activity. Tr. at 128. Kidney and liver function tests performed at this time were within normal limits. Tr. at 155. In early March 2006, Plaintiff reported that he had not been experiencing any pain; by mid-March, except for his ongoing foot pain, Plaintiff stated that he was "[o]therwise doing well." Tr. at 119-21. Finally, although Plaintiff also claims "really bad nerves" as one of his impairments, there is no evidence that Plaintiff ever suffered from anxiety, stress, or any other psychological ailment, and there are no records indicating that he ever sought or received psychological medication or treatment of any kind. In short, Plaintiff provides no evidence at all to prove the existence of this allegedly disabling impairment.

In addition, the opinions and findings of several physicians and examiners who studied Plaintiff's ailments further support the ALJ's decision. State agency examiner Baez-Garcia noted that there was no evidence that Plaintiff had any impairments and concluded that Plaintiff's alleged impairments were thus not severe. Tr. at 102. Furthermore, Baez-Garcia's report was adopted by state agency physician Dr. Saranga. Dr. Saranga reported that Plaintiff's vision, extremities, and all other systems had no noticeable limitations; that there were no signs of swelling or arthritis in Plaintiff's knee; that Plaintiff's blood pressure was under control; and that Plaintiff had no limitations upon examination. Dr. Saranga concluded that Plaintiff's impairments were not severe, adding that Plaintiff's allegations "are only partially credible" in light of the objective medical evidence. Tr. at 208.

Consultative examiner Dr. Kahwash found Plaintiff's right knee to be "grossly normal,"

13

noted that there was no evidence of rigidity, and stated that Plaintiff had normal gait and station and was oriented times three. Dr. Kahwash found that Plaintiff had no joint deformities or decrease in range of motion, that he had a negative straight leg raising in both the sitting and supine positions, and that there was no evidence of nerve root compression. Plaintiff's systems were all normal, he had no impairment in toe to heel walking, and he had no difficulty getting on and off the examining table. Dr. Kahwash concluded that Plaintiff had exhibited no physical evidence for a significant restriction in his tolerance for stooping, bending, reaching, sitting, standing, moving about, lifting, carrying, handling objects, or in his ability to travel. Tr. at 205-07. These statements and opinions are consistent with and supported by the objective medical evidence of record. The ALJ therefore properly relied on them in reaching his decision about Plaintiff's disability application.

      Plaintiff's daily activities also provide evidence in support of the ALJ's conclusion that Plaintiff is not disabled. These activities include cleaning, washing dishes, shopping, mowing the lawn, preparing meals, vacuuming and mopping his house, taking out the garbage, and visiting friends. Tr. at 85; ALJ's Opinion at 5. Many of these activities would necessarily involve a significant amount of standing and walking, which Plaintiff claims to be unable to do in an employment situation. Plaintiff's allegations of totally disabling impairments become significantly less credible in light of the activities that he is able to regularly do without complaint.

      The strongest evidence in Plaintiff's favor is Dr. Photos's medical opinion that Plaintiff "is unable to perform any job that requires standing on his feet or walking for any time." Tr. at 104. Since Dr. Photos is Plaintiff's treating source, this assessment of Plaintiff's ability to

perform work must be considered a treating-source opinion. A treating source is "your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." 20 C.F.R. § 404.1502. The ALJ must give an opinion of a treating source controlling weight in his disability determination if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the claimant's case record. *Id.* § 404.1527(d). If the treating opinion is not given controlling weight, it must be evaluated according to other factors, such as length, nature, and extent of the treatment relationship; frequency of the examination; supportability; consistency; specialization of the source; and any other factors brought to the ALJ's attention. *Id.* at (2)-(6). Moreover, the ALJ must always provide "good reasons" to explain the weight placed on a treating source's opinion in reaching a disability determination. *Id.* at (d)(2). An ALJ's failure to follow this "good reasons" procedural requirement constitutes a ground for reversal, even if the disability decision is otherwise supported by substantial evidence. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544-45 (6th Cir. 2004).

Thus, under the Social Security regulations, the ALJ was required to specify good reasons for his apparent rejection of Dr. Photos's opinion on Plaintiff's work capacity. In his decision, the ALJ restated Dr. Photos's opinion and then went on to discuss other record evidence and medical source opinions. ALJ's Opinion at 5. This evidence included the following: Plaintiff was released from the VA Center with "no restrictions" in December 2005; a review of all Plaintiff's systems, including musculoskeletal, in February 2006 was negative; Dr. Kahwash opined that Plaintiff had no significant physical restrictions; Baez-Garcia and Dr. Saranga opined

15

that Plaintiff had no severe impairments; and Plaintiff has numerous daily activities, lives alone, and has worked after his alleged disability onset date. *Id.*

All of this evidence that the ALJ discussed is clearly contrary to Dr. Photos's opinion that Plaintiff is unable to work.[3] Providing a lengthy discussion of evidence that contradicts a medical opinion, as the ALJ did here, is akin to stating that the opinion is not "well-supported by medically acceptable clinical and diagnostic laboratory techniques" or that it is "inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(d). Moreover, this discussion of the contradictory evidence directly relates to the supportability and consistency factors mentioned in the Social Security regulations. *Id.* at (2)-(6). Thus, although the ALJ did not *explicitly* state his "good reasons" for rejecting Dr. Photos's medical opinion, he certainly *implicitly* provided the requisite good reasons by illustrating how that opinion is contrary to a host of other record medical evidence. The United States Court of Appeals for the Sixth Circuit has held that this implicit or indirect analytical approach satisfies the Social Security regulations' reason-giving requirement. *See Nelson v. Comm'r of Soc. Sec.*, 195 Fed. Appx. 462, 468-72 (6th Cir. 2006) (ALJ indirectly or implicitly addressed several of the § 404.1527(d) factors by referencing evidence consistent with these factors throughout the opinion; this satisfied § 404.1527(d) even though factors not explicitly addressed). The ALJ properly rejected Dr. Photos's medical opinion and relied on contrary medical evidence in reaching his disability decision.

The very same can be said of the ALJ's credibility determination regarding Plaintiff's

---

[3] Dr. Saranga even explicitly rejected Dr. Photos's opinion that Plaintiff is unable to perform any job that requires standing on his feet or walking for any time since this matter "is reserved to the commissioner." Tr. at 208.

16

description of his symptoms. As noted above, the ALJ discussed the two-part test required to assess a claimant's statements about the symptoms of his impairments, as well as the different factors that may be weighed in this assessment. ALJ's Opinion at 4-5; *see also Bogle v. Sullivan*, 998 F.2d 342, 348 (6th Cir. 1993) (explaining required two-part test for credibility determinations). The ALJ concluded that "the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but . . . the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." ALJ's Opinion at 6. Although the ALJ did not follow this statement with explicit reasons explaining why Plaintiff's statements were not entirely credible, he did not need to. After discussing the two-part test and the factors for consideration, the ALJ undertook an examination of the evidence undermining the severity of Plaintiff's alleged impairments, which the Court reviewed above. This evidence supports the ALJ's conclusion that Plaintiff's impairments are not severe, and thus also directly undercuts Plaintiff's allegations of totally disabling pain and other symptoms from his impairments.[4] Since the evidence and reasoning that the ALJ based his credibility determination on was quite obviously the same he relied on for the severity analysis, there was no need for the ALJ to explicitly restate it for the credibility determination. This too is very much like the indirect or implicit analysis the Sixth Circuit approved of in *Nelson*. *See Nelson*, 195 Fed. Appx. 468-72. The ALJ properly determined that Plaintiff's statements about his impairments' symptoms are not entirely credible.

The Court holds that substantial evidence supports the ALJ's conclusion that Plaintiff has

---

[4] The evidence documenting Plaintiff's daily activities particularly addresses this credibility issue by contradicting Plaintiff's claimed inability to perform tasks for extended periods of time.

17

not been disabled since his alleged onset date of August 11, 2004. Substantial evidence is merely "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip*, 25 F.3d at 285-86. Therefore, if substantial evidence supports the ALJ's decision, the Court must uphold that decision, even if another outcome were reasonably possible from the evidence of record. *Jones*, 336 F.3d at 475. Since the ALJ's non-disability decision applies the correct legal standards and is supported by substantial evidence, the Court upholds it. *See Warner*, 375 F.3d at 390. No reversible error was committed here.

**WHEREFORE,** the Court being sufficiently advised, and for the reasons stated above:

(1) Plaintiff's Motion for Summary Judgment is **DENIED**; and

(2) Defendant's Motion for Summary Judgement is **GRANTED**.

Dated this 14th day of July, 2008.

Signed By:
*Karen K. Caldwell* KKC
United States District Judge